<span style="color:red">CORRECTED</span>

# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1767V
UNPUBLISHED

| | |
|---|---|
| KATHRYN RECTOR,<br><br>  Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>  Respondent. | Chief Special Master Corcoran<br><br>Filed: July 13, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA,* for petitioner.

*Ryan Daniel Pyles, U.S. Department of Justice, Washington, DC,* for respondent.

### DECISION AWARDING DAMAGES[1]

On November 13, 2017, Kathryn Rector filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left Shoulder Injury Related to Vaccine Administration (SIRVA) as a result of an influenza ("flu") vaccine administered on October 17, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, I find that Petitioner is entitled to an award of damages **in the amount of $125,000.00, representing compensation in the amount of** $**120,000.00 for actual pain and suffering and $5,000.00 for past lost wages.**[3]

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Prior to the hearing, the parties disputed the proper amount of Petitioner's lost wages but reported during the hearing that they had reached agreement on the amount of $5,000.00.

I.  **Relevant Procedural History**

After the claim's initiation, the parties initially attempted informal resolution of this case through settlement discussions. *See, e.g.*, ECF 21 and ECF 23. After informal resolution failed, Respondent was ordered to file a Rule 4(c) report, in which he conceded that Petitioner was entitled to compensation. ECF 52. In his report, Respondent also noted that he had previously responded to Petitioner's demand with a proffer of compensation and that "[t]he proffer was rejected, and accordingly, the parties will need the Court to determine damages." *Id*.

I issued a ruling on entitlement on November 20, 2019 and set a briefing schedule. ECF 54 and ECF 55. I thereafter scheduled this matter for an expedited hearing and ruling based upon all the evidence filed to date and the parties' briefing. ECF 63. The hearing was held on June 26, 2020.[4]

In her brief, Petitioner requests that I award her $135,000.00 for past and future pain and suffering. ECF 59. Respondent proposes that I award $95,000.00 in pain and suffering. ECF 60.

II. **Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed.

---

[4] The transcript from the hearing has yet to be filed, but it is incorporated by reference herein

Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[5] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.    Appropriate Compensation in this SIRVA Case

In this case, awareness of the injury is not disputed. Therefore, I analyze principally the severity and duration of Petitioner's injury. In doing so, I have reviewed the record as a whole, including the medical records and affidavits filed and all assertions made by the parties in written documents and at the expedited hearing held on June 26, 2020. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience in adjudicating those cases.[6] However, I base my ultimate determination on the circumstances of this case.

The evidence herein establishes that Petitioner's SIRVA, plus her related treatment and recovery, is consistent with that of many other petitioners who also required surgery after their injury. Three days after receiving the flu vaccine on October 17, 2016, Petitioner was referred to her employer-provided "intermediate care" clinic after complaining of continuing left shoulder pain. Ex 2 at 25. She initially rated her pain as 3/10 and physical examination (PE) revealed only tenderness with full range of motion (ROM). Ex 2 at 25-28. However, at three subsequent visits with a nurse practitioner in November 2016, Petitioner rated her pain as ranging from 3-7/10 and PE revealed positive impingement sign and pain with ROM exercises. Ex 2 at 17-20, 22-24.

Petitioner subsequently returned to work at light duty and started physical therapy (PT) but her symptoms started to worsen in January 2017. Ex 4, Ex 2 at 9, 11. She had

---

[5] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[6] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Human Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

an MRI in February 2017 that showed a full thickness rotator cuff tear (Ex 2 at 72). After the MRI, Petitioner continued to report increasing pain, and at an orthopedic visit in April 2017, she rated her pain as 8/10. PE revealed multiple abnormal findings, including subacromial crepitus and tenderness, decreased ROM, weakness of the rotator cuff, and positive impingement sign. Ex 10 at 14.

Due to her worsening condition, Petitioner underwent left shoulder arthroscopy with arthroscopic repair of a rotator cuff tear on May 9, 2017. Ex 6 at 1-2. In June, she returned to PT and attended 21 sessions through August 2017. Ex 9. In the meantime, she returned to work on modified duty in mid-July 2017. Ex 10 at 5. At that time, she was only taking over-the-counter medication for pain relief, and she had her final visit with her orthopedist on August 23, 2017. Ex 10 at 3-5. While Petitioner reports continued pain in her affidavit, her medical records since September 2017 reflect only one complaint of shoulder pain, during a December 2018 annual exam, where she reported shoulder pain "in the last few weeks." Ex 15 at 14.

As I informed the parties during the expedited hearing conducted on June 26, 2020,[7] the question in this case is not *whether* Petitioner is entitled to compensation for her pain and suffering, but rather *what amount* of compensation is justified, based upon the facts of the case and considered relevant input. This determination is not an exact science but more of an art. While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties (especially where, as here, their competing proposed sums establish a reasonable "high-low" framework), each petitioner deserves an examination of the specific facts in his or her case.

Overall, I find that the proper pain and suffering award for this case should fall somewhere above the median amount typically awarded in SIRVA cases that result in surgery – and thus more than what Respondent proposes. Petitioner initially had only mild symptoms, but after conservative treatment failed, both her pain and other objective findings worsened. Within three months of surgery, however, Petitioner had returned to light duty work, and she was no longer receiving SIRVA-related treatment. Her pain and suffering were overall more significant than most, but not so egregious as to justify an award at the level proposed by Petitioner.

The factual circumstances in Petitioner's case are highly similar to the petitioners in *Kelley*[8] and *Collado*.[9] In *Kelley*, the petitioner initially had good relief after a cortisone injection but then experienced a worsening of her symptoms that resulted in surgery.

---

[7] An official recording of the proceeding was taken by court reporter, and a link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entries for this proceeding. Minute Entry, dated June 26, 2020; *see also* www.uscfc.uscourts.gov/trans (last visited July 9, 2020).

[8] *Kelley v. Sec'y of Health & Human Servs.*, No. 17-2054V, 2019 WL 5555648 (Fed. Cl. Spec. Mstr. Aug. 2, 2019 (awarding $120,000.00 for pain and suffering).

[9] *Collado v. Sec'y of Health & Human Servs.*, No. 17-0225V, 2018 WL 3433352 (Fed. Cl. Spec. Mstr. June 6, 2018) (awarding $120,000.00 for pain and suffering).

4

However, as with Petitioner in this case, Ms. Kelley had significant improvement after surgery, attended over 40 PT sessions (compared with Petitioner's 35), and her total time from injury to post-surgical recovery was 13 months (compared with Petitioner's 11 months). The petitioner in *Collado* also experienced significant improvement after surgery but experienced a "total injury" period was only seven months, although she reported significant pain in that timeframe. Both of these petitioners received $120,000.00 in actual pain and suffering.

I have also considered the other cases referenced by Petitioner in her brief in support of a higher award but do not find them sufficiently comparable to be persuasive. The petitioner in *Curri*,[10] for example, was awarded $120,000.00 in past pain and suffering *plus* $550.00 per year in future pain and suffering because she had been assessed with a "permanent disability," a determination not present in Ms. Rector's existing medical records. Ms. Curri's "total injury" also lasted for 37 months, much longer than Petitioner's recovery. Ms. Rector returned to work, and her medical records since September 2017 reflect only one complaint of shoulder pain. *Dobbins*[11] similarly describes more severe circumstances. While that petitioner had a comparatively brief recovery, she had significant abnormal findings on her MRI and multiple procedures performed during surgery. She also attended intensive physical therapy (32 sessions in only three months).

Therefore, I find an award of $120,000.00 is appropriate for Petitioner's pain and suffering.

## IV.  Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $120,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[12] **I also find that Petitioner is entitled to $5,000.00 in lost wages.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $125,000.00 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

---

[10] *Curri v. Sec'y of Health & Human Servs.*, No. 17-432V, 2018 WL 6273562 (Fed. Cl. Spec. Mstr. Oct. 31, 2018).

[11] *Dobbins v. Sec'y of Health & Human Servs.*, No. 16-0854V, 2018 WL 4611267 (Fed. Cl. Spec. Mstr. Aug. 15, 2018) (awarding $125,000.00 for pain and suffering).

[12] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required.  *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

The clerk of the court is directed to enter judgment in accordance with this decision.[13]

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.